IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES DEREK ARTHUR,

          Plaintiff,

v.                               CIVIL ACTION NO.   3:15-13159

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

This action seeks review of the Social Security Commissioner's final decision denying Plaintiff Charles Derek Arthur's (Claimant's) application for Disability Insurance Benefits ("DIB"). Pursuant to 28 U.S.C. § 636(b)(1)(B), this action was referred to United States Magistrate Judge Omar J. Aboulhosn for proposed findings of fact and recommendation for disposition. In his Proposed Findings and Recommendation, the Magistrate Judge recommends Claimant's Motion for Judgment on the Pleadings be denied, that the like motion of Defendant be granted, the decision of the Commissioner be affirmed, and that this matter be dismissed from the docket of the Court. ECF No. 17. Claimant now objects to the proposed findings. ECF No. 18. For the reasons set forth below, the Court **DENIES** Claimant's objection and **ACCEPTS AND INCOPORATES** herein the Findings and Recommendation of the Magistrate Judge.

**I.
STANDARD OF REVIEW**

This Court must "make a de novo determination of those portions of the . . . [Magistrate Judge's] proposed findings or recommendations to which objection is made." 28

U.S.C. § 636(b)(1)(C). However, the scope of this Court's review of the Commissioner's decision is narrow. This Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 42 U.S.C. § 405(g), which states, in part, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .") (other citations omitted), *superseded on other grounds,* 20 C.F.R. § 416.927(d)(2); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (also citing 42 U.S.C. § 405(g), among other authorities). "Substantial evidence" is defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (internal quotation marks omitted)); *see also Craig*, 76 F.3d at 589.

It is the role of the Administration Law Judge (ALJ), not this Court, to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. "'Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner]'s designate, the ALJ).'" *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)). "The issue before [this Court], therefore, is not whether [Claimant] is disabled, but whether the [ALJ]'s finding that [he] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* (citing *Coffman v. Bowen*, 829 F.2d 514, 517 (4th

Cir. 1987)). This Court is required to "uphold the [Commissioner]'s decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted).

## II.
## DISCUSSION

In this case, Claimant raises two related issues. First, Claimant argues that the Magistrate Judge erred in finding that the ALJ was not required to develop the record with respect to Claimant's representation he was illiterate. Second, Claimant asserts the Magistrate Judge erred in accepting the ALJ's finding that Claimant's statements were not entirely credible. Upon de novo review, the Court finds both objections without merit.

### A.
### Development of the Record

With respect to his first objection, Claimant alleges he is illiterate and the ALJ erred in finding that he has a "limited education." Pursuant to 20 C.F.R. § 404.1564(b)(1), "illiteracy" is defined as "the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). On the other hand, § 404.1564(b)(3) defines a "limited education" as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 404.1564(b)(3).

In her decision, the ALJ found that, although Claimant testified he is illiterate, he "noted that he attended adult literacy classes, and read close to the second grade level." *Decision of the ALJ*, at 8 (R. at 100) (April 11, 2014), ECF No. 9-3, at 30. The ALJ also found Claimant stated "in a Disability Report that he could read and write, and reported in a Function Report that he was able to pay bills, handle a savings account, and use a checkbook and had to read instructions multiple times." *Id*. at 9, (R. at 101), ECF No. 9-3, at 31. Given this evidence, the ALJ found Claimant met the definition of having a "limited education" under § 404.1564(b)(3).

In his objection, Claimant argues the ALJ was required to develop the record with respect to his literacy, and the Magistrate Judge erred in his analysis of the ALJ's decision by pointing to evidence that the ALJ did not rely upon at steps four and five of the sequential process. Specifically, the Magistrate Judge noted there was evidence from July 2012 showing Claimant's intellectual functioning was in the average range and, despite the fact Claimant only attended school until the ninth grade and was represented by counsel, he failed to submit any school records supporting his claim of illiteracy.[1] Additionally, Claimant states he is not required to prove deficits in adaptive functioning to show he is currently illiterate. Although Claimant agrees that educational evidence may be probative with respect to his "adaptive functioning and literacy during the development period, [he asserts] it would not provide conclusive evidence that [he] was literate or functioned at the level of a 'limited education' at the time of his hearing, which occurred nearly 40 years after he dropped out of high school." *Pl's. Obj. to Mag. Judge's PF&R*, at 3, ECF No. 18. Given there is no literacy testing in the record, Claimant argues it was the ALJ's

---

[1]At step two, the ALJ found Claimant's overall intellectual functioning was noted to be in the average range in July 2012 and he only had a ninth grade education. *Id*. at 4, (R. at 96), ECF No. 9-3, at 26.

responsibility to develop the record and require such testing be performed. Claimant insists this responsibility exists irrespective of the fact he was represented by counsel.

An ALJ, however, is not required to order a consultative examination where the evidence is sufficient to analyze a claimant's functional abilities. *See Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) (stating "the regulations state that the ALJ has discretion in deciding whether to order a consultative examination"); 40 C.F.R. § 404.1519a(b) (providing, in part, "[w]e may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim"). Here, the Court finds a consultative examination was unnecessary because substantial evidence exists in the record to support the ALJ's decision. Even if the Court sets aside the fact Claimant did not submit his school records and a 2012 cognitive evaluation showed he was of average intellectual functioning, the other evidence of record indicating he can read, write, pay bills, and handle savings and checking accounts is sufficient to show he meets the definition of a "limited education" and he does not meet the definition of being illiterate. Therefore, the Court finds the ALJ did not err by not ordering literacy testing.[2]

**B.
Credibility Analysis**

Claimant further argues it was error for the Magistrate Judge to find the ALJ's credibility analysis supported a finding Claimant was able to read and write. At the time the ALJ issued her decision, Social Security Rule (SSR) 96-7p provided:

---

[2]In fact, Defendant points out that Claimant never even asked for a consultative evaluation for literacy at the hearing. In addition, the Magistrate Judge never said Claimant was required to submit school records in order to prove he is illiterate.

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

SSR 96–7p, 1996 WL 374186, at *1 (July 2, 1996). In determining Claimant's residual functional capacity, the ALJ discussed both Claimant's medical evidence and evidence of his literacy, including Claimant's own testimony he was illiterate, hid his illiteracy from his employers, and had his driver's license test read to him. Upon consideration of the evidence, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Decision of the ALJ*, at 8, (R. 100), ECF No. 9-3, at 30.[3]

Almost two years after the ALJ issued her decision,[4] SSR 96–7p was rescinded and replaced by SSR 16-3p. The new Rule provides, in part:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the

---

[3]Claimant also states he submitted evidence that he could not spell simple words and someone else completed his Social Security forms.

[4]The ALJ issued her decision on April 11, 2014.

> individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p 2016 WL 1119029, at *10 (S.S.A. Mar. 16, 2016). The new Rule eliminates the term "credibility" and clarifies "adjudicators will not assess an individual's overall character or truthfulness." *Id.* at *1, 10.

In light of this change, Claimant argues the Court should analyze the ALJ's findings under the new Rule because it clarifies, rather than changes, existing law. *See Cole v. Colvin*, 831 F.3d 411, at 412 (7th Cir. 2016) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character[.]"[5]); *Holbert v. Colvin*, No. 2:15-CV-11550, 2016 WL 4939114, at *13 n.5 (S.D. W. Va. June 9, 2016) (Eifert, Mag.) (evaluating claim under 16-3p as it merely clarified the existing law); *but see Kinchen v. Colvin*, No. 3:16CV55(JAG), 2016 WL 7646364, at *7 n.2 (E.D. Va. Dec. 20, 2016), report and recommendation adopted, No. 3:16CV55 (JAG), 2017 WL 57135 (E.D. Va. Jan. 4, 2017) (reviewing decision under Rule 96-7p because the decision was issued before 16-3p took effect); *Piper v. Colvin*, No. 2:15-CV-12555, 2016 WL 5109521, at *4 n.2 (S.D. W. Va. Sept. 20, 2016) (Johnston, J.) ("SSR16-3p is effective only to decisions issued after its effective date of March 28, 2016."). Thus, Claimant insists his credibility should not have been considered with respect to his ability to read or write. However, as noted by Defendant, regardless of what Rule applies in this case, the result is the same "because the two-step process and factors for evaluating a claimant's subjective symptoms remains substantially the same as that for assessing the credibility of a

---

[5]The Seventh Circuit said there were some areas in which an ALJ would still have to assess credibility, such as reports of pain that cannot be credited or rejected by medical evidence. *Id*.

claimant's statements under SSR 96-7p." *Johnson v. Colvin*, No. Civ. Act. No. 6:15-4419-RBH-KFM, 2017 WL 238454, at *10 n.4 (D. S.C. Jan. 3, 2017), report and recommendation adopted, No. 6:15-CV-04419-RBH, 2017 WL 228004 (D. S.C. Jan. 19, 2017); *see also Vest v. Colvin*, No. 2:15-CV-05886, 2016 WL 5334668, at *5 n.5 (S.D. W. Va. Sept. 22, 2016) (Johnston, J.) (finding "that the ALJ's analysis of Plaintiff's subjective symptoms, even if it speaks in terms of 'credibility' as described in SSR 96–7p, employs the correct process and evaluates the correct factors under either ruling, and so makes no finding as to SSR 16–3P's retroactive application").[6]

Under the first step, "there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the . . . symptoms alleged." *Craig*, 76 F.3d at 594 (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)) (emphasis from *Craig* deleted). If a claimant meets this threshold obligation, the ALJ proceeds to the second step, which entails evaluating "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [the claimant's] ability to work." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1)). At this second step, the ALJ has full discretion to weigh Claimant's statements with the objective evidence. The ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] treating or nontreating source or other persons about how [the claimant's] symptoms affect" him or her. 20 C.F.R. § 404.1529(c)(4), in part.

---

[6] In *Vest*, the Honorable Thomas E. Johnston further stated "there exists no binding authority addressing whether [SSR 16-3p] should apply retroactively to SSA decisions that were rendered before the ruling was issued." *Id.* (citation omitted).

In this case, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" *Decision of the ALJ*, at 8 (R. at 100) ECF No. 9-3, at 30. In other words, the ALJ found Claimant met the threshold requirements of step one. At step two, the ALJ's evaluation considered the correct factors and employed the correct process under either Rule, despite the fact it was couched in terms of credibility as was written in the Rule that existed at the time of the decision. That is, the ALJ weighed Claimant's statements against the rest of the evidence and found the other evidence did not support Claimant's assertion of illiteracy. Nevertheless, the ALJ still determined Claimant "should not have a job where he is required to read instructions or write reports." *Id*. at 7 (R. at 99), ECF No. 9-3, at 29. Given this analysis, the Court finds no merit to Claimant's objection.

## III.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Claimant's Objections to Magistrate Judge's Findings and Recommendation (ECF No. 18), **ADOPTS AND INCOPORPORATES HEREIN** the Findings and Recommendations (ECF No. 17), **DENIES** Claimant's Motion for Judgment on the Pleadings (ECF No. 12), **GRANTS** Defendant's Motion for Judgment on the Pleadings (ECF No. 13), and **AFFIRMS** the final decision of the Commissioner.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: January 30, 2017

_____
ROBERT C. CHAMBERS, CHIEF JUDGE